# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BOZENA SARNECKA-CROUCH

                Plaintiff,

        v.

JAMES BILLINGTON,
LIBRARIAN OF CONGRESS

              Defendant.

Civil Action No. 06-1169 (ESH)

SECOND AMENDED COMPLAINT

## SECOND AMENDED COMPLAINT

## NATURE OF ACTION

1.      This is an action for equitable relief and money damages arising out of discrimination against Plaintiff Bozena Sarnecka-Crouch based on her age and in retaliation for her having engaged in protected activity.

2.      Plaintiff brings these claims pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*., and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 42 U.S.C. § 2000e-16(c) and 28 U.S.C. §§ 1331 and 1343.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because (1) the Library of Congress is within this judicial district, (2) the events giving rise to the Plaintiff's claim for relief occurred within this judicial district, (3) the unlawful acts are alleged to have

been committed in this judicial district, (4) the records relevant to such acts are maintained in this judicial district, (5) Plaintiff worked in this judicial district, and (6) Plaintiff is domiciled in this judicial district.

5.      Plaintiff has fulfilled all conditions precedent prior to instituting this lawsuit, as necessary, and has otherwise exhausted her administrative remedies.

## PARTIES

6.      Plaintiff is a female, sixty-seven years of age, and a resident of the District of Columbia.

7.      Defendant Mr. James Billington is the Librarian of Congress and as such heads the Library of Congress, a department within the Legislative Branch of the Government of the United States.  As the Librarian of Congress, Defendant is charged with the enforcement of the ADEA, the Rehabilitation Act, and the ADA, with respect to employment at the Library of Congress.  He is sued in his official capacity.

## ALLEGATIONS

## I.    BACKGROUND

8.      Plaintiff is an attorney who is admitted to practice law in the District of Columbia, the Commonwealth of Pennsylvania, before the United States Supreme Court, and in Poland.

9.      Plaintiff first earned a Juris Doctor degree from Warsaw University School of Law in Poland in 1964.  She later traveled to the United States and studied law at Duke University School of Law, where she earned a second Juris Doctor degree in 1986.

10.     In May 1988, Plaintiff was hired by the Library of Congress as a "Foreign Law Specialist" in the Law Library, a Series 095 attorney position.  The Library of Congress hired Plaintiff at the grade level of GS-12 and she continued her work as a Foreign Law Specialist for

sixteen years. During that time, she received multiple within-grade promotions and multiple

above-grade promotions. In total, Plaintiff worked for the Library of Congress for seventeen

years and four months.

11.    In 1994, the Law Library was reorganized and Dr. Tao-tai Hsia became Plaintiff's

immediate supervisor. Later in that same year, Mr. Rubens Medina became the Law Librarian.

## II.    ELIMINATION OF PLAINTIFF'S POSITION

12.    On September 8, 2003, Mr. Medina hired Mr. W. Gary Sharp as the Law

Library's Director of Legal Research.

13.    During the first six months of Mr. Sharp's tenure, multiple older employees

retired early from the Law Library. On January 2, 2004, Dr. Hsia retired earlier than he had

initially intended. On information and belief, on December 30, 2003, before he retired, Dr. Hsia

wrote a letter to Mr. Medina stating, "The primary reason I decided to retire at this time is

because Mr. W. Gary Sharp, the new Director of Legal Research, has created a hostile work

environment in the Directorate. His abuse is so severe and pervasive as to unreasonably interfere

with my performance of assigned duties and responsibilities as Division Chief."

14.    Upon information and belief, other older employees retired early because they

believed Mr. Medina and Mr. Sharp had created a hostile employment atmosphere for older

employees. Giovanni Salvo and Natalie Gawdiak were employees at the Law Library who were

over the age of forty. Mr. Salvo and Ms. Gawdiak retired earlier than they had planned as a

result of the hostile work environment created and contributed to by Mr. Medina and Mr. Sharp.

15.    After Dr. Hsia retired, Mr. Sharp became Plaintiff's acting supervisor.

16.    On March 25, 2004, less than three months after Dr. Hsia's retirement, Plaintiff

received a letter from Ms. Teresa A. Smith, Director for Human Resources Services, stating that

Plaintiff's position was being abolished, effective June 25, 2004, as part of a reduction in force ("RIF"). In addition to Plaintiff, the RIF abolished positions that were held by Dr. George Glos, age seventy-nine, and Takeo Nishioka, over age sixty. Upon information and belief, the RIF did not abolish any positions that were held by Law Library employees who were under the age of forty.

17.     In the Foreign Law Specialist position, Plaintiff's primary jurisdiction was Poland and her secondary jurisdiction had always been the Soviet Union. From 1993 to 1996, Plaintiff was the only Foreign Law Specialist covering the fifteen jurisdictions of the Former Soviet Union, including Armenia, Azerbaijan, Belarus, Estonia, Georgia, Kazakhstan, Kyrgyzstan, Latvia, Lithuania, Moldova, Russian Federation, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan. During her sixteen years in the Law Library, Plaintiff has also covered other Central and East European jurisdictions, including Albania, Bosnia & Herzegovina, Bulgaria, Croatia, Czech Republic, Hungary, Republic of Macedonia, Romania, Serbia, Slovenia, Slovak Republic, and Former Yugoslavia. Plaintiff was able to do this because she has regional knowledge of the legal systems in those jurisdictions. She also knows several Central and East European languages including Polish, Russian, Ukrainian, Slovak, Czech, Serbo-Croatian, Bulgarian, French, German, and Italian.

18.     Plaintiff's position description did not limit her responsibility to any particular jurisdiction.

19.     On the basis of Plaintiff's skills, knowledge, qualifications and experience, the Law Library could have retained Plaintiff and assigned her requests from other jurisdictions outside of Poland and the Former Soviet Union or could have assigned her to another Foreign Law Specialist position.

20.    Upon information and belief, Clare Feikert, Sayuri Umeda, and Gustavo Guerra were also Foreign Law Specialists at the time Plaintiff's position was abolished.  Upon information and belief, these Foreign Law Specialists were under age forty and had less retention preference than Plaintiff, but were not included in the RIF.

21.    After Plaintiff was advised of the RIF, but before it became effective, the Library of Congress hired Andrew Weber, a 2003 law school graduate, to fill an attorney position, without giving Plaintiff the right to refuse that position.  Plaintiff had the right of first refusal under the Collective Bargaining Agreement between the Library of Congress and the Library of Congress Professional Guild AFSCME Local 2910.

22.    On April 22, 2004, Plaintiff filed a complaint with the Library of Congress's Equal Employment Opportunity ("EEO") Office alleging that the elimination of her position was age discrimination (EEO Case No. 04-51).  In her complaint, Plaintiff alleged that younger employees at the same or lower level, with less retention preference, were retained and not subject to the RIF.

23.    Nearly two years later, on March 3, 2006, Plaintiff's EEO complaint alleging age discrimination in relation to the RIF, EEO Case No. 04-51, was rejected by the Library of Congress.  Plaintiff received the rejection on March 6, 2006, and timely filed a Request for Reconsideration.  On April 19, 2006, Plaintiff received a letter dated March 19, 2006, rejecting her Request for Reconsideration of EEO Case No. 04-51.

III.    **REASSIGNMENT, DISABILITY, FAILURE TO ACCOMMODATE DISABILITY, AND TERMINATION**

24.    In June 2004, immediately before the RIF would have become effective, the Library of Congress offered Plaintiff a GS-11 position as a Copyright Specialist in the Literary Section, Examining Division, Copyright Office.  This position did not require a bachelor's or

professional degree or knowledge of foreign languages, and was three grades lower than the

position Plaintiff had worked in for the previous ten years.  Plaintiff had never occupied such a

low grade position since she commenced her employment with the Library of Congress in 1988

at GS-12.  However, the Library of Congress did not offer Plaintiff any other position at that

time.  Plaintiff accepted the reassignment after being informed of her right to be hired for any

future vacancy for which she was minimally qualified and had sufficiently superior retention

preferences over other staff members in the Library of Congress's Priority Placement Program.

25.    When the Library of Congress reassigned Plaintiff to the Copyright Specialist

position, it exposed her to irradiated material on a constant basis.

26.    In July 2004, Plaintiff began work as a Copyright Specialist, which required her

to handle two types of irradiated mail – cash claims and deposit account materials.  Cash claims

generally consisted of correspondence from individuals, while deposit account materials were

books or other printed materials from publishing houses and other similar institutions.  Upon

information and belief, cash claim materials were highly irradiated while deposit account

materials were irradiated at a lower level.

27.    After one month of work as a Copyright Specialist, Plaintiff became seriously ill.

Upon information and belief, exposure to irradiated mail caused the Plaintiff to suffer a violent

cough, chronic rhinitis, chronic asthma, and epistaxis.

28.    In August 2004, Plaintiff made a request through her immediate supervisor,

Thomas Bland, for an accommodation based on her medical condition.  Mr. Bland denied the

request and, upon information and belief, informed Plaintiff that an accommodation could only

be provided through Library Health Services if Plaintiff provided appropriate medical

documentation.  Plaintiff sought the opinion of several medical doctors in her effort to obtain the

required medical documentation, but was required to continue handling the irradiated material to satisfy her job requirements.

29.     On December 22, 2004, after several months of being examined by various medical specialists regarding her exposure to irradiated mail and taking several medications, Plaintiff filed an additional request for an accommodation to her disability that would reduce or eliminate her exposure to irradiated material.  Plaintiff made the request through the Library Health Services Office.

30.     On February 3, 2005, the Library Health Services Office requested that Plaintiff's supervisors reduce Plaintiff's exposure to irradiated mail.  Plaintiff's supervisor adjusted work assignments so Plaintiff handled only deposit account materials, which were irradiated at a lower level than cash claims.

31.     With the accommodation, Plaintiff was able to fulfill all the requirements of her position.  In June 2005, Plaintiff received a within-grade step promotion while she worked as a Copyright Specialist.  Additionally, a SF-50 Notification of Personnel Action dated June 25, 2005, stated that Plaintiff's "work performance [was] at an acceptable level of competence."

32.     However, during the same month (June 2005), the Library of Congress gave Plaintiff a Notice of Proposed Removal, informing her that she would be removed from her position as a Copyright Specialist because of her purported inability to perform the major duties of the position.  The Library of Congress claimed that because Plaintiff could only examine the lesser irradiated materials, she was unable to perform the full range of major duties of this position.  Plaintiff timely filed a Reply to the Notice of Proposed Removal.

33.     On August 17, 2005, Plaintiff filed a Complaint of Discrimination, EEO Case No. 05-84, alleging that her removal constituted age and disability discrimination and retaliation.  On

September 2, 2005, Plaintiff's Complaint was not accepted for formal processing because it allegedly failed to show an adverse employment action. Plaintiff filed a Request for Reconsideration on September 27, 2005. That Request for Reconsideration was also denied.

34.     On October 4, 2005, the Library of Congress provided Plaintiff with an adverse action decision letter that stated the decision to remove her was final and that Plaintiff would be removed from her position of Copyright Specialist effective October 21, 2005. Upon information and belief, this removal was based upon disciplinary adverse action regulations, normally applicable to employee misconduct, and would have caused Plaintiff to lose her health insurance and retirement benefits. On October 20, 2005, one day prior to her removal, Plaintiff reluctantly filed for immediate retirement in order to retain her health insurance and limited retirement benefits. Plaintiff's request was accepted and processed. Upon retirement, Plaintiff received retirement benefits equal to only seventeen percent of her salary. By being forced to retire early, Plaintiff lost the opportunity to qualify for a substantially larger pension.

## IV.    FAILURE TO PROVIDE PRIORITY PLACEMENT

35.     After the Library of Congress abolished Plaintiff's position pursuant to the RIF and reassigned her to a lower grade position, the Library of Congress was required to provide her priority placement. The Library of Congress was obliged to maintain a Priority Placement Register of employees who had been eliminated by the RIF and to refer affected employees for consideration for vacant positions.

36.     Plaintiff agreed to participate in the Priority Placement Program. The Library of Congress had an obligation to automatically consider Plaintiff for priority placement in positions for which she was minimally qualified. On August 9, 2004, Ms. Smith advised Plaintiff by letter that Plaintiff "will automatically receive priority placement consideration."

37.     Library of Congress Rules provided that an employee referred for Priority Placement must be selected for the position for which she has been referred unless she did not meet the minimum qualifications required for the position.

38.     From July 2004 to August 2006, Plaintiff met the minimum qualifications for eleven vacant positions, applied for the positions, but was not selected for any of them.

## V.    DENIAL OF ATTORNEY-ADVISOR (INTERNATIONAL) POSITION

39.     Beginning in August 2004, while working as a Copyright Specialist and being subjected to the irradiated material, Plaintiff applied under the Priority Placement Program for vacancy announcement No. 040112, Attorney-Advisor (International) GS-0905-14 at the Office of Associate Register for Policy and International Affairs, Register's Office, Copyright Office. Plaintiff was qualified to perform the duties of this position.  Plaintiff was referred for an interview and was interviewed on October 19, 2004, for the Attorney-Advisor position.  More than a month after her interview, Plaintiff received a letter on November 30, 2004, stating that she was not minimally qualified for the Attorney-Advisor position.

40.     Upon information and belief, the Library of Congress hired Oliver P. Metzger, an attorney under age forty, for the Attorney-Advisor (International) position.

41.     On February 22, 2005, Plaintiff filed a complaint with the EEO Office alleging discrimination and retaliation, EEO Case No. 05-32.  Plaintiff alleged that she was minimally qualified to perform the duties of the Attorney-Advisor (International) position and her non-selection for the position was retaliation against her for having filed an age discrimination complaint.  On March 3, 2006, Plaintiff's complaint alleging retaliation, EEO Case No. 05-32, was rejected by the Library of Congress.  Plaintiff received the rejection on March 7, 2006.

## VI.     DENIAL OF LEGISLATIVE ATTORNEY POSITION(S) IN CONGRESSIONAL RESEARCH SERVICE

42.     In December 2004, while working as a Copyright Specialist and being subjected to the irradiated material, Plaintiff applied under the Priority Placement Program for Legislative Attorney positions, GS-0905-11-14, in the Congressional Research Service.   Upon information and belief, the Library of Congress hired seven attorneys to fill these positions.  Plaintiff was qualified to perform the duties of these positions.  Plaintiff was rejected for the positions and was told, without any further justification, that the Library of Congress "has made other selections."

## VII.    DENIAL OF LEGISLATIVE ATTORNEY POSITION IN LAW LIBRARY

43.     In February 2005, while working as a Copyright Specialist and being subjected to the irradiated material, Plaintiff applied under the Priority Placement Program for vacancy announcement No. 040259, a Legislative Attorney position GS-11 in the Law Library.  This position required a law degree and offered promotion potential to GS-14.  Although Plaintiff was fully qualified for the position, the Law Library did not include Plaintiff on the list of candidates deemed eligible for the Legislative Attorney position.

44.     The Law Library, however, included Mr. Andrew Weber on the list of candidates deemed eligible for the Legislative Attorney position.  Upon information and belief, Mr. Weber was under age forty and had worked in the Law Library on a contract basis since June 2004. Upon information and belief, Mr. Weber was less qualified than Plaintiff for this position.

45.     Mr. Sharp, Plaintiff's previous acting supervisor, was the selection official for the Law Library Legislative Attorney position.  Plaintiff had previously discussed with Mr. Sharp the fact that she held Juris Doctor degrees.  Mr. Sharp claimed Plaintiff was not selected for the list of eligible candidates because she had checked "none of the above" in the Education/Licensing requirement section of the AVUE on-line application.  In fact, Plaintiff had

not submitted an online AVUE application.  Plaintiff had submitted only a hard copy paper application.

46.    On information and belief, Plaintiff's prior counsel contacted Mr. Jessie James in the Office of General Counsel regarding the Law Library Legislative Attorney position.  Upon information and belief, Mr. James told Plaintiff's prior counsel that he had advised Mr. Sharp that if the Law Library was to select anyone for the Legislative Attorney position, it was required to select Plaintiff.  The Law Library subsequently cancelled the Legislative Attorney vacancy.

47.    On April 1, 2005, Plaintiff filed a complaint with the EEO Office alleging discrimination and retaliation, EEO Case No. 05-66.  Plaintiff alleged that her non-selection for the Law Library Legislative Attorney position was retaliation for filing two EEO complaints (Case Nos. 04-51 and 05-32).  On March 3, 2006, Plaintiff's complaint alleging retaliation, EEO Case No. 05-66, was rejected by the Library of Congress.  Plaintiff received the rejection on March 7, 2006, and timely filed a Request for Reconsideration.  On March 23, 2006, Plaintiff's Request for Reconsideration of EEO Case No. 05-66 was denied.  Plaintiff received the denial on March 27, 2006.

## VIII.  DENIAL OF SECOND ATTORNEY-ADVISOR (INTERNATIONAL) POSITION

48.    In August 2005, while working as a Copyright Specialist and pursuing multiple EEO complaints of discrimination and retaliation, Plaintiff applied under the Priority Placement Program for vacancy announcement No. 050215, Attorney-Advisor (International) GS-0905-11.  Plaintiff was qualified to perform the duties of this position.  This position was in the Office of Associate Register for Policy and International Affairs, Register's Office, Copyright Office.  The Plaintiff delivered an additional copy of her application to William Ayers, Jr., then Acting Director of the Office of Workforce Acquisition and left several messages with the employment

office regarding the status of her application.  Plaintiff was never informed of the reason why she

was not included on the list of eligible applicants and was not selected for the position.

IX.    **DENIAL OF ANOTHER LEGISLATIVE ATTORNEY POSITION IN
       CONGRESSIONAL RESEARCH SERVICE**

49.    On June 23, 2006, Plaintiff applied for vacancy announcement No. 060156,

Congressional Research Service Legislative Attorney, GS-13.  Plaintiff was not selected for the

position.

## CLAIMS

## COUNT I: AGE DISCRIMINATION UNDER THE ADEA

50.    Plaintiff reasserts the allegations contained in each and every above paragraph,

the same as if set forth herein.

51.    On June 25, 2004, the Library of Congress abolished Plaintiff's position as a

Foreign Law Specialist through a purported RIF while retaining the positions of employees

under age forty, over whom Plaintiff had superior retention rights and whose positions Plaintiff

was qualified to fill.  In addition to Plaintiff, the Library of Congress abolished the positions of

or constructively forced the retirement of other Law Library employees over age forty while

retaining the positions of employees under age forty.

52.    In abolishing Plaintiff's position while retaining the positions of employees under

age forty, the Library of Congress unlawfully discriminated against Plaintiff on the basis of her

age or unlawfully continued a pattern and practice of systematically forcing older employees out

of the Library and replacing them with younger employees, in violation of the ADEA, 29 U.S.C.

§§ 621, *et seq.*

53.     The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT II: RETALIATION UNDER THE ADEA

54.     Plaintiff reasserts the allegations contained in each and every above paragraph, the same as if set forth herein.

55.     In June 2004, the Library of Congress reassigned Plaintiff to a GS-11 grade position as Copyright Specialist in the Literary Section, Examining Division, Copyright Office, which position the Library of Congress knew would expose Plaintiff to irradiated material.

56.     In reassigning Plaintiff to this lower-grade position and exposing her to high levels of irradiation, the Library of Congress materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities, and took materially adverse action against Plaintiff that would dissuade or intimidate a reasonable employee from making or supporting a charge of discrimination.

57.     In so doing, the Library of Congress retaliated against Plaintiff on account of her participation in protected ADEA activity, in particular, initiating the EEO complaint process in April 2004 and pursuing that complaint.

58.     The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, physical injury, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT III: RETALIATION UNDER THE ADEA

59.     Plaintiff reasserts the allegations contained in each and every above paragraph, the same as if set forth herein.

60.    In or about November 2004, the Library of Congress denied Plaintiff employment in the position of Attorney-Advisor (International), even though Plaintiff was qualified to perform the duties of the position and entitled to the position pursuant to the Priority Placement Program.

61.    In denying Plaintiff the position of Attorney-Advisor (International), the Library of Congress materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities, and took materially adverse action against Plaintiff that would dissuade or intimidate a reasonable employee from making or supporting a charge of discrimination.

62.    In so doing, the Library of Congress retaliated against Plaintiff on account of her participation in protected ADEA activity, in particular initiating the EEO complaint process in April 2004 and pursuing that complaint.

63.    The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT IV: AGE DISCRIMINATION UNDER THE ADEA

64.    Plaintiff reasserts the allegations contained in each and every above paragraph, the same as if set forth herein.

65.    In or about February 2005, the Library of Congress excluded Plaintiff from the list of eligible applicants for the position of Legislative Attorney in the Law Library, even though Plaintiff was fully qualified for the position and entitled to the position pursuant to the Priority Placement Program.  The Library of Congress included Mr. Andrew Weber, who, upon information and belief, was under age forty and much less qualified for the position, on the list of

eligible applicants.  To avoid hiring Plaintiff, as the Library of Congress would have been required to do under the Priority Placement Program, the Library of Congress cancelled the vacancy.

66.     In excluding Plaintiff from the list of eligible applicants, while including an applicant under age forty on the list, and ultimately canceling the vacancy to avoid hiring Plaintiff, the Library of Congress unlawfully discriminated against Plaintiff on the basis of her age or unlawfully continued a pattern and practice of systematically forcing older employees out of employment and replacing them with younger employees, in violation of the ADEA, 29 U.S.C. §§ 621, *et seq*.

67.     The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT V: RETALIATION UNDER THE ADEA

68.     Plaintiff reasserts the allegations contained in each and every above paragraph, the same as if set forth herein.

69.     In or about February 2005, the Library of Congress denied Plaintiff employment in the position of Legislative Attorney in the Law Library by canceling the position to avoid hiring Plaintiff.

70.     In denying Plaintiff the position of Legislative Attorney in the Law Library, the Library of Congress materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities, and took materially adverse action against Plaintiff that would dissuade or intimidate a reasonable employee from making or supporting a charge of discrimination.

71.     In so doing, the Library of Congress retaliated against Plaintiff on account of her participation in protected ADEA activity, in particular, initiating the EEO complaint process in April 2004 and pursuing that complaint.

72.     The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT VI: RETALIATION UNDER THE ADEA

73.     Plaintiff reasserts the allegations contained in each and every above paragraph, the same as if set forth herein.

74.     Plaintiff's SF-50 Notification of Personnel Action dated June 25, 2005, acknowledged that Plaintiff's "work performance [was] at an acceptable level of competence." In the same month, Plaintiff received a within-grade step promotion.  However, in October 2005, the Library of Congress notified Plaintiff that she would be removed from her position as Copyright Specialist effective October 21, 2005.

75.     In processing Plaintiff's removal from her position as Copyright Specialist, the Library of Congress materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities, and took materially adverse action against Plaintiff that would dissuade or intimidate a reasonable employee from making or supporting a charge of discrimination.

76.     In so doing, the Library of Congress retaliated against Plaintiff on account of her participation in protected ADEA activity, in particular initiating the EEO complaint process in April 2004 and pursuing that complaint.

77.    The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT VII: CONSTRUCTIVE DISCHARGE UNDER THE ADEA

78.    Plaintiff reasserts the allegations contained in each and every above paragraph, the same as if set forth herein.

79.    In June 2004, the Library of Congress abolished Plaintiff's position while retaining employees under age forty in their positions.  About the same time, the Library of Congress reassigned Plaintiff to the lowest grade position she had ever held while working for the Library of Congress, and in that position she was exposed to highly irradiated material.  In August 2004, despite Plaintiff's request, the Library of Congress failed to make a reasonable accommodation for Plaintiff's substantial health injuries, which she suffered from her consistent exposure to highly irradiated material.  In November 2004, the Library of Congress denied Plaintiff a position as Attorney-Advisor (International).  In December 2004, the Library of Congress denied Plaintiff a position as Legislative Attorney in the Congressional Research Service.  In February 2005, the Library of Congress denied Plaintiff a position as Legislative Attorney in the Law Library.  Plaintiff was qualified to perform the duties of each of these positions.  In June 2005, the Library of Congress issued Plaintiff a Notice of Proposed Removal, and pursued Plaintiff's removal until her involuntary retirement on October 20, 2005, one day prior to the date on which the Library of Congress had threatened to terminate Plaintiff.

80.    In so doing, the Library of Congress constructively discharged Plaintiff by making her work conditions objectively intolerable and leaving her no option but to retire.

81.    In constructively discharging Plaintiff, the Library of Congress unlawfully discriminated against Plaintiff on the basis of her age, or unlawfully continued a pattern and practice of systematically forcing older employees out of employment and replacing them with younger employees, in violation of the ADEA, 29 U.S.C. §§ 621, *et seq*.

82.    The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, loss of benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT VIII: RETALIATION UNDER THE ADA AND THE REHABILITATION ACT

83.    Plaintiff reasserts the allegations contained in each and every above paragraph, the same as if set forth herein.

84.    As a consequence of the Library of Congress exposing her to highly irradiated material, Plaintiff was injured and suffered substantial health impairment beginning in August 2004.  Acting upon her belief that, as a result of her health injuries, federal law entitled her to an accommodation in the workplace, Plaintiff formerly made a request for an accommodation in August 2004.  The Library of Congress denied that request.  Plaintiff then sought the opinion of several medical doctors, who documented her health injuries and her need for an accommodation.  On December 22, 2004, Plaintiff filed an additional request for an accommodation that would reduce or eliminate her exposure to irradiated material.   On February 2, 2005, the Library Health Services Office also requested that Plaintiff's supervisors reduce her exposure to irradiated material.  Thereafter, Plaintiff's supervisor provided a temporary accommodation by adjusting Plaintiff's work assignments so that Plaintiff handled only deposit account materials.  In June 2005, a Notification of Personnel Action stated that Plaintiff's "work performance [was] at an acceptable level of competence."  However, in the same month, the

Library of Congress issued Plaintiff a Notice of Proposed Removal.  On August 17, 2005,

Plaintiff filed a Complaint of Discrimination, EEO Case No. 05-84, alleging that her removal

constituted age and disability discrimination and retaliation.  In October 2005, the Library of

Congress notified Plaintiff that she would be removed from her position as Copyright Specialist

effective October 21, 2005.

85.     In threatening Plaintiff with loss of employment, by issuing her a Notice of

Proposed Removal, the Library of Congress materially and adversely altered the terms,

conditions, and privileges of Plaintiff's employment and Plaintiff's future employment

opportunities, and took materially adverse action against Plaintiff that would dissuade or

intimidate a reasonable employee from making or supporting a request for an accommodation.

86.     In removing Plaintiff from her position as Copyright Specialist, the Library of

Congress materially and adversely altered the terms, conditions, and privileges of Plaintiff's

employment and Plaintiff's future employment opportunities, and took materially adverse action

against Plaintiff that would dissuade or intimidate a reasonable employee from making or

supporting a charge of discrimination.

87.     In so doing, the Library of Congress retaliated against Plaintiff on account of her

participation in protected activity, in particular, requesting an accommodation for her health

injuries, which she believed to be a disability under federal law, and pursuing that request for

approximately six months until a temporary accommodation was provided.

88.     The Library of Congress further retaliated against Plaintiff on account of her

initiating the EEO complaint process in August 2005 alleging disability discrimination and

pursuing that complaint.

89.     The Library of Congress's violation of Plaintiff's civil rights caused her to suffer loss of income, loss of benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## INJURY

90.     As a direct and proximate result of the Library of Congress's action as set forth above in both counts, and because such conduct was with malice and/or reckless indifference to Plaintiff's federally protected rights, Plaintiff has:

i.      Suffered loss of wages;

ii.     Suffered loss of fringe benefits;

iii.    Suffered loss of opportunity to continue gainful employment;

iv.     Suffered loss of retirement benefits;

v.      Suffered emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life;

vi.     Suffered adverse health effects;

vii.    Costs of medical care not covered by insurance;

viii.   Suffered loss of time and money in endeavoring to protect herself from the Library of Congress's unlawful discrimination and retaliation, including costs and reasonable attorneys' fees of this action.

## REQUEST FOR RELIEF

91.     WHEREFORE, Plaintiff requests that this Court enter judgment:

- 20 -

a.     declaring the acts and practices complained of to be in violation of the ADEA, 29 U.S.C. §§ 621, *et seq.*;

b.     declaring the acts and practices complained of to be in violation of the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*;

c.     declaring the acts and practices complained of to be in violation of the Americans with Disabilities Act, 29 U.S.C. § 12101, et seq.;

d.     directing the  Library of Congress to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e.     directing the Library of Congress to reinstate Plaintiff in a position at the Library of Congress, Law Library, that utilizes her legal expertise with a position grade of at least GS-14 pursuant to the Priority Placement Program;

f.     directing the Library of Congress to make the Plaintiff whole for all earnings, compensation and benefits she would have received but for the Library of Congress's discriminatory and otherwise wrongful actions, including, but not limited to, wages, prejudgment interest, supplements, bonuses, pension, severance benefits, benefits that would have otherwise been included in Plaintiff's pension plan(s), medical insurance, medical leave and personal leave, insurance policies, and other lost benefits, to the extent there is a variance between those the Plaintiff earned and those she would have received;

g.      awarding Plaintiff the maximum amount of compensatory damages
authorized by statute for each count plead;

h.      awarding Plaintiff monetary damages in the form of back-pay,
prejudgment interests and, in the absence of her reinstatement, front-pay;

i.      awarding Plaintiff the costs of this action, together with reasonable
attorneys' fees, to the maximum extent available under the law; and

j.      grant any further relief that this Court deems just and proper.

### JURY DEMAND

Plaintiff requests a trial by jury.


Respectfully submitted,



  /s/  M. Carolyn Cox
M. Carolyn Cox
DC Bar No. 226035
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

- 22 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of November 2007, a copy of the foregoing

Second Amended Complaint was filed electronically with the Clerk of the Court and served via

email to Sherease Pratt (sherease.pratt@usdoj.gov).


   /s/  M. Carolyn Cox
               M. Carolyn Cox