# EXHIBIT 5

# WILMERHALE

May 23, 2008

By E-mail and First Class Mail

Megan M. Weis
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530

**Will Crossley**

+1 202 663 6731 (t)
+1 202 663 6363 (f)
will.crossley@wilmerhale.com

Re: Discovery in Sarnecka-Crouch v. Billington, Civil Action No. 06-1169

Dear Ms. Weis:

I write to convey our continuing concern about the ongoing discovery delays in this cause of action. We have made multiple attempts to address discovery in this case, and every attempt has been met with delay. The repeated failures of the Library of Congress ("Library") to respond timely and fully to Plaintiff's discovery requests frustrate our ability to fairly litigate this matter or to respond to your offer of settlement.

As previously acknowledged to you by email on May 16, 2008, we have received the Library's written settlement proposal. We appreciate the Library's willingness to begin settlement negotiations at a relatively early point in this case. However, as we noted when this proposal was orally presented during our May 7, 2008 conference call, we cannot respond to your settlement proposal without certain minimal discovery information. That that end, the parties agreed during the May 7 conference call that the Library would make available for our review plaintiff's employee personnel file and the merit selection files referenced in the Library's responses to Plaintiff's discovery requests. Consistent with this understanding, the parties agreed to enter a consent protective order.

In your May 15 letter, you subsequently suggested that, despite the entry of the protective order, the Library no longer intends to provide us access to the merit selection files because, in the Library's view, the time spent reviewing these files will likely substantially increase the costs of litigating this matter. As such, you encouraged us to focus our efforts on settlement negotiations. We agree that fair and serious consideration should be given to settlement negotiations. But, as we informed you during the May 7 conference call, we cannot adequately advise our client with respect to your client's settlement offer without reviewing a relatively small amount of discovery material, including the merit selection files. The Library's apparent unwillingness to cooperate in even this minimal discovery at this time hinders our ability to participate in settlement negotiations and leaves us no alternative but to insist that we proceed with discovery more broadly. We will, at the same time, respond to the Library's offer of settlement on or before May 29, 2008.

**WILMERHALE**

Megan M. Weis
May 23, 2008
Page 2

As you know, we have substantial concerns about the adequacy of the Library's responses to our initial discovery requests. Plaintiff served her First Request for Production of Documents (the "Document Requests") and her First Set of Interrogatories (the "Interrogatories") on the Library on February 1, 2008. Defendant did not provide responses to these discovery requests until April 7, 2008, more than two months after the date of service of the requests. On April 22, 2008, I contacted Assistant United States Attorney John Interrante by email and expressed to him our interest in discussing the insufficiency of the Library's discovery responses. After considerable delay by Mr. Interrante, we were able to schedule a conference call with your office and the Library for May 7, 2008, to address these discovery concerns. As you know, we were unable to address our discovery concerns on that call in light of Mr. Interrante's taking a period of extended leave from your office and your then-recent substitution as counsel for the Library. In good faith, we provided you a week to review the files and then contacted you on May 14, 2008. During that May 14 telephone call, you agreed to have a telephone conference with us regarding our discovery concerns on Monday, May 19. However, two days later, on Friday, May 16, you cancelled the May 19 conference call and proposed rescheduling for the week of June 2.

Given this record, we have concluded that we can no longer await an oral discussion of the significant deficiencies in the Library's discovery responses. We have therefore set forth below many of the deficiencies we have identified in Defendant's responses to the Document Requests and Interrogatories. We seek your serious consideration of these issues and request a written response to each of these points below no later than May 30, 2008. If the Library fails to respond by that date, Plaintiff will have no other choice but to seek the assistance of the Court in resolving this matter.

<u>Potential Incomplete Discovery Responses</u>: In several of the Library's responses, it is unclear whether the Library is continuing to search for responsive information or has provided its complete response. See, for example, Responses to Interrogatories Nos. 2 and 8, and Responses to Document Requests Nos. 4, 18, 19, 20, 21 and 24.

    A.    For each referenced Interrogatory or Document Request, please inform us whether the Library's response is complete or it is searching for additional information. If the Library's responses are not complete, when does it expect to complete production?

<u>Conducting Email and Electronic Document Searches Related to Plaintiff's Discovery Requests</u>: In response to certain requests, we anticipated that there would be responsive email communications and/or responsive electronic data. However, your production included relatively little email and a relatively minimal amount of electronic data in any form. For example, the production does not include email or electronic files from Plaintiff's employee email account or computer during her tenure as an employee of the Library.

WILMERHALE

Megan M. Weis
May 23, 2008
Page 3

    A.    Are email communications available for the 2004 to 2005 time period? If not, please describe and explain the Library's document retention policy concerning email and electronic data.

    B.    Can you confirm that the Library has searched email and other electronic data storage for responsive documents? If so, has the Library completed this search? If not, when can we expect the Library to complete its search and review of responsive electronic data?

    C.    Can you confirm that the Library has asked current and former employees for potentially responsive email or electronic data maintained on their work or home computers or on electronic data storage media?

Response to Interrogatory No. 1: Plaintiff is concerned that the Library has not provided all of the information explaining the reasons the RIF was instituted. The Library's response does include some information about the RIF decision, but that information dates from 2004-forward. For example, the production includes documents and information relating to Walter Sharp's drafting of a memorandum regarding the RIF on behalf of Law Librarian Rubens Medina. We would have expected the production to include documents reflecting discussion and planning for the RIF prior to January 2004, the time that Mr. Sharp began assembling the RIF memorandum, and we would have expected that Dr. Medina would have been involved.

    A.    In addition to the files provided, has the Library taken other steps to respond to this interrogatory? Can you confirm that the Library discussed this request with all of the relevant persons involved, including but not limited to Dr. Medina and Mr. Sharp?

    B.    Similarly, the Library's response does not state whether actions other than a RIF were considered and, if so, what those other considerations entailed. Please confirm that no other actions were considered or explain the other considerations that were made.

    C.    The response also does not state or identify the individuals involved in the RIF or their roles therein, as explicitly requested in the Interrogatory. The Library has an obligation to respond to our request by identifying each individual involved in the RIF decision and describing his/her role.

Response to Interrogatory No. 2: In response to this Interrogatory, which requests every fact and consideration relating to the adverse action, the Library has cited the adverse action file maintained by the Office of Workforce Management.

WILMERHALE

Megan M. Weis
May 23, 2008
Page 4

    A.    Has the Library searched for information that may exist outside of the Office of Workforce Management file? Please confirm.

Response to Interrogatory No. 3: The Library has not provided any explanation or documents responsive to this Interrogatory. Plaintiff is entitled to discovery regarding employment positions that were available beginning in January 2004, the approximate time of the RIF decision. Pursuant to Library of Congress Regulation ("LCR") 2013-307 and LCR 2021-2, Plaintiff had a right to be considered for such positions as part of the RIF and the PPP. Plaintiff's references to "Legal Specialist," "Senior Legal Specialist," "Foreign Law Specialist," and "other attorney, researcher or librarian position" were an effort to narrow the scope of this request and to focus the Library's response. The Library has responded that it does not maintain its merit selection files by generic position titles. The Interrogatory, however, also requests information about all GS-14 positions.

    A.    Please confirm that the Library cannot search employment vacancies by position title or position grade. If the Library cannot search vacancies by either of these methods, please explain the criteria by which the Library maintains records of employment vacancies and Plaintiff will rephrase her request accordingly.

Response to Interrogatories Nos. 4 and 5: The Library has not provided any explanation or documents responsive to these Interrogatories. This is an age discrimination case. The requested information, relating to the age, seniority, position titles, relative workloads and similar information of Law Library employees, is unquestionably relevant. Plaintiff is entitled to this information. The Library argues that these requests are burdensome because they seek information about every employee of the Law Library. It is our understanding that the Law Library consists of fewer than 100 employees. The request, therefore, hardly seems burdensome. Nevertheless, in the interests of cooperation and moving this case forward, Plaintiff is willing to limit the timeframe of both interrogatories to 1994 to the present and to limit the positions described in Interrogatory No. 5 to those that substantially involved the laws of foreign jurisdictions, such as positions under the Directorate of Legal Research or other administrative units within the Library of Congress.

    A.    Please inform us the date by which the Library will provide answers to these interrogatories as limited herein.

Response to Interrogatory No. 6: The Library has responded that Plaintiff may review the merit selection files for every applicant for every vacancy to which Plaintiff applied, subject to a protective order.

    A.    Is it the Library's position that the merit selection files contain the only responsive information?

**WILMERHALE**

Megan M. Weis
May 23, 2008
Page 5

    B.    Please confirm that the Library has also searched the employees who assessed the applicants or conducted the interviews for these positions.

    C.    Please inform us when and how the Library will make the merit selection files available to us for review. Plaintiff is available immediately to receive and review these files.

Response to Document Request No. 1: Based on our review of documents produced, the Library has only produced two organizational charts. We understand the Library's objection to producing organizational charts that cover a period of 20 years, but we believe that information about the Library's organization will assist us in limiting future discovery requests. This will minimize the overall costs of discovery in this case. Plaintiff is nevertheless willing to limit this request to a five-year period consisting of the years 2001 to 2005 inclusive.

    A.    Please inform us the date by which the Library will produce the requested documents.

Response to Document Request No. 2: The Library has objected to this request for employee policies and procedures by asserting the request is overbroad because, among other things, it may include production of Titles 2, 5, and 42 of the United States Code, and every Directive ever issued by the Director, Human Resources Service of the Library of Congress. We think the Library's objections overstate the breadth of our requests. As you are well aware, the Library is under no obligation to produce publicly available documents or information. In addition, the request is limited to employee and personnel policies in effect after January 1, 2004, not every directive ever issued.

While some Library personnel regulations were included on the disk the Library produced, the disk contains only a portion of the 2000 series personnel regulations. Specifically, the disk included only 90 regulations even though the Library's response to this request acknowledged there are currently 143 regulations in the 2000 series.

    A.    Please review the production and confirm for us that it is complete or provide us a complete set of the 2000 series personnel regulations.

    B.    With regard to the remainder of this request, we are willing to limit it to all compensation and benefits policies or plans that were applicable to Plaintiff after January 1, 2004. Please inform us the date by which the Library will produce the requested documents.

Response to Document Request No. 5: The Library has objected to Plaintiff's request for age discrimination and retaliation complaints from other actions brought against the Library. Other

WILMERHALE

Megan M. Weis
May 23, 2008
Page 6

age discrimination and retaliation complaints against the Library are unquestionably relevant. The Library has a clear obligation to search for and produce this information. We agree with the Library's assessment that this request would require it to search all of its EEO complaints, but we believe that such a search is precisely what the discovery rules demand. A search of 700 EEO complaints is not, as the Library has suggested, unduly burdensome. The initial review need only involve a determination as to whether each complaint involved age discrimination or retaliation. Additionally, we would note that the Library has an obligation to search for copies of any responsive complaints in its files that have been received from other adverse parties or been filed against the Library in a court or other administrative proceeding.

    A.    Please inform us the date by which the Library will produce the requested documents.

Response to Document Request No. 7: The Library has objected to Plaintiff's request for documents relating to other RIFs at the Library since 1988. This information relates to Plaintiff's claims that she was treated differently than other employees and that the Library retaliated against her. In requesting documents relating to other RIF actions, Plaintiff anticipated the number of prior RIF actions would be low. For example, as far as we are aware, this is the only RIF that has occurred in the Law Library in the past 20 years. Nonetheless, Plaintiff is willing to narrow this request to the period 1994 to the present in the interests of moving forward with discovery.

    A.    Please inform us the date by which the Library will produce the requested documents.

Response to Document Requests Nos. 8 and 9: We do not understand the Library's responses to Plaintiff's requests for information sufficient to understand the BATS system.

    A.    Please explain the Library's response. Is the Library asserting it has no documents that help explain BATS? If so, please explain what steps were taken to find information sufficient to explain the BATS systems?

    B.    Regarding complaints about the use of BATS, did the Library search email for such complaints? In his Affidavit submitted in EEO Case No. 04-51, Mr. Sharp acknowledged that employee complaints about BATS existed. We would expect to see documents related to those complaints. Please confirm that no such documents exist or inform us the date by which the Library will produce the requested documents.

Response to Document Request No. 11: The Library has objected to Plaintiff's request for information about employment vacancies after January 2004. This request is highly relevant to

WILMERHALE

Megan M. Weis
May 23, 2008
Page 7

Plaintiff's job placement as a result of the RIF and to her placement during her participation in the Priority Placement Program. Plaintiff is willing to limit the dates of the request to employment vacancies over a two-year period from January 2004 to January 2006.

    A.    Please inform us the date by which the Library will provide the requested documents.

Response to Document Request No. 12: The Library has responded that it will allow us to review the merit selection files for the positions to which Plaintiff applied, subject to the entry of a protective order. As you know, the protective order has been entered.

    A.    Please inform us when and how the Library will make the merit selection files available for our review. Plaintiff is available immediately to receive and review these files.

    B.    In addition, please clarify whether it is the Library's position that the merit selection files constitute the only responsive documents to this request. If so, please confirm that the Library has searched all employees who participated in the selection process of any position for which Plaintiff applied.

Response to Document Requests Nos. 13 and 14: The Library has objected to Plaintiff's requests for documents relating to employee placements following a RIF or pursuant to the PPP. Again, Plaintiff's complaint plainly alleges she was improperly reassigned after the RIF and not properly placed pursuant to the PPP. The information requested is unquestionably relevant to the question of how plaintiff's treatment differed from that of other Library employees.

With regard to the RIF (Document Request No. 13), it is our understanding that the Library has undertaken relatively few RIF actions over the past 20 years, so we believe this request is sufficiently limited by its own terms. However, Plaintiff is willing to further limit this request to 1994 to the present.

    A.    Please inform us the date by which the Library will provide the requested documents.

Concerning the PPP (Document Request No. 14), Plaintiff is entitled to documents in the Library's possession and control relating to this program, including but not limited to documents related to other participants in the PPP between 2004 and 2005; copies of the Priority Placement register as referenced in LCR 2013-3.7; determinations about Plaintiff's qualification made by the Recruitment and Placement Office for the purpose of establishing a register and making referrals (LCR 2013-3.7(8)(B)(4); and documents relating to any job referrals of any employee in the PPP between Jan 1, 2004 and Dec. 31 2005.

WILMERHALE

Megan M. Weis
May 23, 2008
Page 8

> A. Please inform us the date by which the Library will provide the requested documents.

Response to Document Request No. 15: The Library has objected to this request as vague because Plaintiff did not sufficiently identify the Legislative Attorney position that is the subject of the request. In fact, Plaintiff identified the relevant Legislative Attorney position in her Second Amended Complaint, paragraphs 43-46. A copy of the vacancy announcement for this position is also included in the documents produced by the Library. The vacancy announcement number is 040259.

> A. Please inform us the date by which the Library will produce the requested documents.

Response to Document Request No. 16: The Library has responded that it will allow Plaintiff to review the merit selection files for the positions to which Andrew Weber applied.

> A. Please inform us the date and manner upon which the Library will make the merit selection files available to Plaintiff.

Response to Document Request No. 17: The Library asserts that it is not aware of any documents, other than Plaintiff's complaints, responsive to Plaintiff's request for documents relating to the adverse health effects of exposure to irradiated material. However, Plaintiff's counsel conducted a simple internet search and learned of the Library's participation in a study addressing this very issue. Specifically, the Library participated in a study titled, "Investigation of the Health Effects of Irradiated Mail," a report of the General Counsel of the Office of Compliance, U.S. Congress, July 2, 2002. Among other things, the report notes that "the Library requested volunteers for this study [and] one hundred and forty (140) employees volunteered...Library officials have advised us that they have not completed their survey." The existence of this report and the Library's significant involvement in the study suggests the Library did not take sufficient action to search for documents responsive to this request.

> A. Please confirm that the Library conferred with all relevant employees about this request, including management employees who could likely be recipients of complaints relating to the adverse health effects of handling irradiated material.
>
> B. Please inform us the date by which the Library will produce documents responsive to this request.

Response to Document Request No. 23: The Library has objected to Plaintiff's request for documents relating to allegations against Mr. Sharp and Dr. Medina for discrimination or

Megan M. Weis
May 23, 2008
Page 9

WILMERHALE

misconduct. This request is relevant because Mr. Sharp and Dr. Medina were the principal officials responsible for Plaintiff's RIF.

Regarding the need to manually search 700 EEO complaints, as we have stated elsewhere in this letter, Plaintiff does not find such a search to be overly burdensome. In addition, the Library's response suggests EEO complaints are the sole source of this requested information. It is certainly possible, indeed probable, that employees could have complained or filed grievances outside of the EEO process. Relevant material might reasonably be located, for example, in personnel files; with Mr. Sharp's or Dr. Medina's supervisory officials; on email or electronic data servers; or in complaints filed with the Library's Office of General Counsel.

    A.    Please inform us when and how the Library will make the merit selection files available to Plaintiff.

    B.    Please also inform us the date by which the Library will produce additional documents responsive to this request.

Sincerely,

Will L. Crossley