UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BOZENA SARNECKA-CROUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1169 (ESH/JMF) |
| ) | |
| JAMES BILLINGTON, ) | |
| LIBRARIAN OF CONGRESS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Pending before the court and ready for resolution is <u>Plaintiff's Notice of Motion and Motion to Reopen and to Enforce the Stipulation of Settlement and Dismissal</u>. [#50]. Having already granted the motion to reopen the case, I will now address each of plaintiff's requests for relief seriatim.

1.  <u>Social Security Reporting and Contributions: The Library of Congress Must Provide a Full Accounting</u>

Plaintiff has moved for an order compelling defendant "to make all Social Security reporting and contributions for the years 2006 through 2009 as required by the settlement" and, to the extent that it cannot, "to compensate plaintiff in an amount equivalent to her expected lifetime Social Security benefit increase resulting from the retroactive promotion and constructive reinstatement" pursuant to the terms of the settlement agreement. [#50] at 1.

Pursuant to the settlement agreement, the Library of Congress ("the Library") agreed to promote plaintiff to GS-15, step ten retroactive to October 20, 2005, and to fund the requisite payments so that plaintiff would receive her pension and her Social Security benefits adjusted to

reflect that she is deemed employed at the GS-15 step ten level from October 20, 2005 through her effective retirement on August 1, 2009. Stipulation of Settlement and Dismissal [#48] at 2. Defendant allocated $150,000 to fund plaintiff's increased benefits and the parties agreed that, if the full amount was not required to fully fund plaintiff's increased benefits, defendant would pay plaintiff what remained within ninety days of the effective date of the settlement. Id. at 2-3.

The terms of the settlement state that the estimated cost of funding the increased benefits was approximately $89,000, but included a provision that the amount was subject to change. Id. On November 20, 2009, within the ninety day time frame contemplated by the settlement, the Library informed plaintiff that the initial estimate was low and that the actual cost of funding her increased benefits had been calculated as $99,550.26. [#50-3] at 2. On November 27, 2009, plaintiff received a lump sum payment from the Library in the amount of $51,449.74. [#50] at 4-5. On December 8, 2009, the Library informed plaintiff that the "final cost calculation [for the increased benefits] was conservative (and the final cost amount was actually more than $99,000)." [#50-24] at 1. The Library stated, however, that it would not reduce plaintiff's benefits because the Library had already authorized the payment of $51,449.74. Id.

On May 24, 2010, counsel for the Library informed counsel for plaintiff that the actual cost for funding plaintiff's increased benefits was $132,178.25. [#50-6] at 2. By that same communication, counsel for the Library informed counsel for plaintiff that the Library had already fully funded her increased benefits pursuant to the settlement.[1] Id. Despite this representation, and in contravention of the 2008 and 2009 W-2s the Library issued to plaintiff, the Social Security Administration does not have any record of Social Security wages reported by

---

[1] The Library communicated to plaintiff that it had paid the following amounts: $33,684.63 for 2006; $34,930.15 for 2007; $36,798.59 for 2008; and $26,764.88 for 2009 through her effective retirement date of August, 1. 2009. [#50-6] at 2.

the Library for plaintiff for 2008, and the amount reported for 2009 is less than it should have been under the settlement. [#50-4]; [#50-5]; [#50-14].

During a hearing held before this court on June 27, 2012, the Assistant United States Attorney and a representative for the Library explained that the Library had fully funded plaintiff's increased Social Security benefits.  Plaintiff's Social Security file does not reflect this, however.

The settlement agreement states in part that "[d]efendant shall also take all other steps necessary on defendant's part to enable plaintiff to retire from the federal service with plaintiff's length of service at the grade GS-15 step 10 level, measured from October 20, 2005 . . . . [through] plaintiff's retirement from the Library, effective August 1, 2009." [#48] at 3-4.  A plain reading of the settlement contemplates that the Library would ensure that plaintiff would receive the increased benefits bargained for, which definitely includes increased Social Security benefits.  There is obviously confusion as to the status of plaintiff's Social Security benefits.  The Library will therefore be ordered to provide the court and plaintiff with a detailed accounting of the payments made, pursuant to the settlement agreement, to fund plaintiff's increased benefits, including Social Security.[2]  The Library will also be ordered to make a complete accounting to this court of the amounts paid pursuant to the settlement agreement and to take all measures necessary to ensure that the Social Security Administration has the correct information with

---

[2] In the Library's opposition to the motion to reopen and enforce the settlement, the Library puts forth an argument that it never should have paid plaintiff's Social Security contributions. See Defendant's Response to Plaintiff's Motion to Reopen and to Enforce the Stipulation of Settlement and Dismissal [#55] at 5-6.  The Library argues that because the Office of Personnel Management ("OPM") does not require that a settlement include Social Security contributions, it should not have made such payments in the first place. Id. at 6.  However, the settlement is express in that it states that the Library would in fact fund plaintiff's Social Security contributions, and this *post hoc* repudiation of the plain language of the settlement will be given no further attention.

regards to the benefits paid on behalf of plaintiff, as memorialized in the May 24, 2010 letter. See [#50-6]. In addition, the Court will order Michael Astrue, in his official capacity as Commissioner of the Social Security Administration, to provide the Library of Congress with all documents pertaining to plaintiff's Social Security benefits account for the period 2005-2009.[3]

2.     Plaintiff is Not Entitled to Any Payment from the Library Because of the Delay in the Increase to Plaintiff's FERS Benefits

One of the agreed upon increased benefits was the increase in plaintiff's Federal Employment Retirement System ("FERS") benefits. See [#48] at 3. Plaintiff did not receive an increase in her FERS benefits until October 2010, instead of after her effective retirement on August 1, 2009. [#50-23]. Plaintiff now requests an order that the Library pay her $17,430 (plus interest), the difference in her FERS benefits from August 2009 through October 2010. [#50] at 1-2.

Plaintiff was receiving annuity payments from FERS during the pendency of this case, from October 2005 through August 2009. Plaintiff's Response to Defendant's Statement of Issues of Fact as to Which There is a Genuine Dispute [#64-1] at 3. The settlement did not take into consideration that plaintiff was receiving an annuity from OPM at a rate based on her 2005 retirement during the pendency of the lawsuit, from 2005 to 2009. The settlement agreement deemed plaintiff retired as of 2009 and contemplated plaintiff receiving an annuity at a rate consistent with plaintiff having been employed for the pendency of the lawsuit. OPM has now determined that plaintiff cannot both receive a FERS annuity for the period of 2005 through 2009 and then an increased annuity rate in 2009. OPM cannot accept the theory that plaintiff was

---

[3] See United States v. New York Tel. Co., 434 U.S. 159, 172 (1977) (power granted by the All Writs Act, (28 U.S.C.A. § 1651) may extend to non-parties who are in a position to frustrate implementation of court order).

constructively employed and paying into the OPM retirement fund for the 2005-2009 time period when, in fact, she was not. See id. at 3-4. OPM therefore informed plaintiff that it would deduct from her annuity a certain amount until the annuities she had incorrectly received in 2005-2009 had been repaid. Id. Plaintiff not only wants to keep the annuities she received during the pendency of the lawsuit but also seeks $17,500 from defendant, the amount that she alleges she has been underpaid by OPM.

There are two scenarios under which plaintiff's OPM annuity can be understood.

1.     Plaintiff can be been deemed retired in 2005, at which point her annuity would have begun at a rate based on her retirement in 2005. That rate would have stayed the same even after the settlement date. Plaintiff should not have received an increase in her annuity in October 2010 since she had in fact retired in 2005, although the settlement agreement deemed her to have retired in 2009.

2.     Plaintiff can be deemed retired in 2009, with the attendant increased annuity rate. But, OPM insists that she cannot receive the increased rate without returning to it the annuity payments she received in the period 2005 to 2009 merely because the agreement deems her to have been employed in that period of time. Thus, OPM has stated that it is going to withhold a portion of her annuity until the full amount of the annuity she received in 2005-2009 has been repaid.[4]

Either way, plaintiff is not entitled to $17,340 *from the Library*. Indeed, her calculation that she is owed $17,340 is based on what OPM would consider the misapprehension that she could somehow be both retired and employed in the 2005-2009 period and is therefore entitled to both keep all of her annuity payments for the period 2005 to 2009 and then get an increase in

---

[4] Plaintiff is challenging the OPM determination.

those payments as of her "deemed" retirement in 2009.

3.      The Library's Notice of Dunning Is Prohibited

On July 15, 2010, counsel for the Library sent counsel for plaintiff a letter indicating that, because the Library had exceeded the amount agreed upon in the settlement by $33,627.99, plaintiff would either have to refund that amount or agree to amend the settlement to permit plaintiff to keep the overpayment but release the Library from any further claims, including the claims she is making now. [#50-21] at 3.  This is in direct contravention of the communication from counsel for the Library on December 8, 2009, in which the Library expressly stated that plaintiff's benefits would not be decreased because of the miscalculation in the final cost for funding her increased benefits. [#50-24].  Additionally, the settlement agreement clearly states that the calculations for the cost of plaintiff's increased benefits would be calculated and the remainder, if any, would be paid to plaintiff within ninety days of the effective date of the settlement. [#48] at 3.  The agreement became effective when it was signed by all parties on August 31, 2009. [#48] at 10-12.  The Library failed to complete its calculations in full within the proscribed time period.  It cannot now attempt to recoup from plaintiff funds that it transferred to her, especially in light of its representation that, despite its excess payment, it would not do so. Plaintiff's motion with regards to the Notice of Dunning will be granted as the Library failed to timely calculate the actual cost of the increased benefits and furthermore averred that it would not attempt to recoup the excess payment.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE